**Lloyd James McPHERSON, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Aug. 31, 1977.

Certiorari Denied by Supreme Court March 6, 1978.

---

Charles A. Leach, Malcolm L. McCune, Nashville, for appellant.

Brooks McLemore, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Michael D. Noel, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendant-appellant was convicted of rape and sentenced to serve ten years in the penitentiary. The same jury then considered evidence presented by the State concerning the defendant's prior convictions and returned a guilty verdict on the charge of habitual criminality, imposing the mandatory life sentence. On appeal the defendant challenges (1) the admissibility of an oral statement introduced against him at trial, and (2) the constitutionality of Tennessee's habitual criminal statute, T.C.A. § 40–2801. For the reasons set forth below, we affirm both convictions.

### I.

The only challenge presented by the defendant to the rape conviction concerns the admissibility of certain oral statements made by the defendant to police officers. After the defendant had been identified from a lineup by the rape victim, he was arrested and held in the county workhouse. While in jail, he was placed in solitary confinement, commonly called "the hole," after he assaulted a guard in an attempt to escape. The defendant spent eight days in the hole, during which time his only visitor was a clergyman, the Reverend James A. Weeks. The defendant told Weeks that he wished to speak to a particular police officer, but did not indicate the purpose for this request. Weeks was unable to locate the officer, who was on vacation at the time.

The next morning the police sent for the defendant, bringing him from the workhouse to police headquarters. The officers had information linking the defendant to another crime, a homicide, about which they wished to question him. After being informed of his *Miranda* rights, the defendant refused to sign a waiver form. Nevertheless, the police began their interrogation after the defendant indicated that he understood his rights and was willing to talk to them. A few minutes later the defendant asked to speak to Reverend Weeks. The police sent for the clergyman, interrupting the questioning until he arrived. After conferring with Weeks, the defendant made a complete confession to the homicide. He then signed the waiver form which was again proffered by the police. Following this, almost as an afterthought, the officers asked the defendant about his involvement in the rape. He made several inculpatory remarks, culminating in an admission of guilt. These statements were not recorded, either electronically or stenographically. At trial the officers present repeated the statements made by the defendant, as best they could remember.

The defendant challenged the admissibility of this confession. He alleged that at the time of the lineup which resulted in his arrest he was represented by the public defender, and that at that lineup the public defender told the police that the defendant would make no statement. The public defender, testifying at the hearing on the defendant's motion to suppress the confession evidence, indicated that he further admonished the police officers not to question the defendant. The content of this conver-

sation, however, was not communicated by the public defender to his client. Two of the interrogating officers testified that they had no knowledge of the conversation; another said he could not recall the specifics of his conversation with the public defender.

The defendant asserts that the trial court erred in permitting testimony concerning the confession because the police violated his Fifth Amendment privilege against self-incrimination and his Six Amendment right to counsel. After a careful review of the testimony, however, we conclude that neither of these contentions is supported by the proof.

■ With regard to the Fifth Amendment claim, the evidence shows conclusively that the defendant was advised of his constitutional rights to remain silent and to have an attorney present during questioning. Instead of insisting on the presence of his attorney, the defendant by his own admission asked only to be allowed to consult with his minister, Reverend Weeks. This request was immediately carried out by the police, who then allowed the defendant to meet privately with Weeks and to have Weeks present during interrogation. Weeks testified that the defendant told him privately he was going to confess because "it was the right thing to do," and that the defendant did not indicate that he wanted his attorney present at any time during the period of questioning. The defendant, testifying at the suppression hearing, said that he was aware at that time he had the right to have his attorney present, that he did not ask the police to call his attorney, and that he confessed to the murder but not to the rape. He said in this regard, "[I confessed to the murder] because I didn't think it made any difference. I figured I could tell them anything and get out of the hole. I mean after all, I didn't commit the crime, you know, and so why should it make any difference. And I realize now that it turned out to be a mistake." He conceded that immediately following his murder confession, he signed a waiver form. He also said that once Weeks arrived, he felt that he would be successful in getting out of the hole.

Reverend Weeks was present throughout the interrogation concerning the murder charge, the rape charge, and two or three other charges which were pending against the defendant. He testified unequivocally to the non-coercive nature of the proceeding.

This proof amply supports the trial court's determination that the statements later admitted into evidence were given voluntarily by the defendant, following a waiver of his *Miranda* rights. The combined testimony of the officers involved, of the neutral eyewitness, and of the defendant himself establishes the existence of a knowing and intelligent waiver. The account given by the minister corroborates the testimony of the interrogating officers and tends to establish that the statement was voluntary, despite the defendant's self-serving testimony to the contrary. We find no Fifth Amendment violation on the record before us.

But the defendant further insists that the conduct of the police infringed upon his Sixth Amendment right to counsel, relying on the recent United States Supreme Court decision in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In *Brewer* the accused had been arrested in Davenport, Iowa, for a homicide occurring in Des Moines. He was represented by separate counsel in both places, and both attorneys had made agreements with local police that the defendant would not be questioned in the absence of counsel, and in particular that he would not be interrogated during his return to Des Moines. Despite this agreement, during the ride from Davenport to Des Moines one of the officers in the vehicle asked the accused about the location of the homicide victim's body. The accused declined to answer, saying he would prefer to wait until after he consulted with his attorney in Des Moines. The officer pressed on successfully, using psychological pressure to secure an admission from the accused. Declining to address the question of a Fifth Amendment *Miranda* violation,

the United States Supreme Court found a violation of the accused's Sixth Amendment right to counsel and reversed his conviction on these facts.

■ We think the defendant's reliance upon *Brewer* is misplaced. While it is true that the defendant's attorney had requested that no statement be taken from his client, there was no agreement that the police would forego questioning in his absence. As the attorney conceded on the witness stand, it remained entirely possible for the defendant to waive his right to have counsel present during questioning, despite the attorney's admonition to the police. See *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972).

■ We have already found that the defendant was informed of his constitutional rights prior to his confession and that he waived these rights for purposes of the *Miranda* requirements. The only remaining question is whether this waiver was also valid for purposes of his right to counsel under the Sixth Amendment. We conclude that there was a valid Sixth Amendment waiver, unless that constitutional provision requires the presence of counsel at the time the waiver is executed. Compare *People v. Hobson*, 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894 (1976) with *Commonwealth v. Yates*, 467 Pa. 362, 357 A.2d 134 (1976) The major factual distinction between this case and *Brewer* is that at the time he was questioned the defendant manifested no desire to have his attorney present, a fact which he conceded at the suppression hearing. Thus there is nothing in the record to refute the officers' testimony that the defendant made an oral waiver of his right to counsel. There is also evidence of his written waiver, executed after the homicide confession but prior to his statement concerning the rape charge. We think the State has discharged its burden of showing, by a preponderance of the evidence, that the defendant's waiver of his right to counsel was voluntary, knowing, and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d

618 (1972). This being the case, we find no Sixth Amendment violation, and no error in the trial court's determination of admissibility.

Nevertheless, we wish to reiterate the trial court's finding that the confession in this case was saved principally by the presence of a neutral witness, Reverend Weeks. We agree fully with the trial judge's conclusion that the police "tread on thin ice" when they question a suspect in the face of a request from his attorney that no interrogation occur in the attorney's absence, whether or not this request is communicated by the lawyer to the client, and whether or not it is communicated by the officer who receives it to the interrogating officers. The police department must undertake measures to ensure that such requests by defense counsel are scrupulously honored. Otherwise there is a great risk that a subsequent confession will be invalidated for lack of adequate proof of waiver. It is the rare case in which a truly disinterested witness, such as Reverend Weeks, will be available to lend credence to an otherwise constitutionally suspect practice.

## II.

■ The defendant next challenges the validity of the habitual criminal statute, T.C.A. § 40–2801. It is asserted that the statute is applied in a discriminatory fashion, because a large percentage of those eligible for prosecution under the act are in fact never prosecuted. Counsel suggests in this context that the application of the habitual criminal sanction is not unlike the discriminatory imposition of the death penalty which was struck down as unconstitutional by the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This same argument was rejected by this Court in *Hobby v. State*, 499 S.W.2d 956 (Tenn.Cr. App.1973), and the Tennessee habitual criminal statute has been repeatedly held to be constitutionally valid. See, *e. g., Canupp v. State*, 197 Tenn. 56, 270 S.W.2d 356 (1954). In addition, the sound exercise of prosecutorial discretion in the selective enforcement

of recidivist statutes has been upheld by the United States Supreme Court. *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). For these reasons, we overrule the assignments of error directed to the validity of T.C.A. § 40–2801.

The judgment of the trial court is affirmed.

RUSSELL, P. J., and HAL D. HARDIN, Special Judge, concur.