**STATE of Tennessee, Appellant,**

v.

**Danny STEARNS, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 5, 1981.

Rehearing Denied June 2, 1981.

Permission to Appeal Denied by Supreme Court Aug. 3, 1981.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, Alan Foster, Asst. Dist. Atty. Gen., Livingston, R. Laken Mitchell, Asst. Dist. Atty. Gen., Cookeville, for appellant.

Paul A. Crouch, Robert H. Roberts, Byrdstown, for appellee.

## OPINION

TATUM, Judge.

This is an appeal by the State from a pre-trial judgment sustaining a motion to suppress a confession given by the defendant. In the confession, the defendant admitted the robbery and murder of Radford Stockton in Pickett County on November 7, 1979. The only issue presented is whether the defendant's confession was voluntarily made following a knowing and intelligent waiver of his constitutional rights.

After information had been received from the alleged accomplice, Darrell Huckelby, implicating the defendant Stearns in the robbery homicide of Stockton, a warrant for the arrest of Stearns was obtained.

Stearns was a resident of Albany, Kentucky, but had gone to Indianapolis, Indiana after the crime was committed. Officers in Indianapolis arrested Stearns early on the morning of November 11, 1979. The defendant waived extradition and was given his *Miranda* rights soon after his arrest by the Indianapolis officers. There is no evidence that the Indianapolis Police Department questioned Stearns or that Stearns gave them a statement concerning the crime.

Two T.B.I. Agents and the Sheriff of Pickett County went to Indianapolis for Stearns after he waived extradition. We will summarize the testimony given by the three officers. They stated that upon their arrival, late on the morning of November 12, the defendant was brought to their automobile by the Indianapolis authorities. Immediately after getting into the automobile, the officers removed Stearns' handcuffs. He did not appear to be drugged or intoxicated. Soon afterwards, they again read the defendant's *Miranda* rights to him and two of the officers testified that they informed him of the offense of which he was charged and that they had a warrant for him. All testified that his conversation indicated that he was aware of the charges against him.

After being advised of his *Miranda* rights and told of the charges against him, the defendant talked freely with the officers and admitted his complicity in the crime. The officers in no way abused, threatened, or coerced the defendant into making the oral confession. The conversation between the officers and the defendant was friendly. The crime was discussed intermittently during the trip and they also discussed various other topics.

Their route took them near the scene of the crime. The defendant willingly left the automobile with the officers at the scene and further discussed the crime there. At the defendant's request, they placed the defendant's handcuffs on him at the scene of the crime; he told the officers that he was afraid that he would run without the handcuffs. After arriving at the Pickett County Jail, the information given by Stearns to the officers was reduced to writ-

ing. He signed the written statement voluntarily. After signing the confession, he was brought into the cell with the co-defendant, Huckelby, but we do not deem it necessary to further discuss what occurred after the confession was orally given, reduced to writing and signed by the defendant.

The defendant testified that he was arrested early on the morning of Sunday, November 11 by the Indianapolis police who told him that he was wanted as a witness. He volunteered to come back to Pickett County "on his own." He also signed a document furnished to him by the Indianapolis police advising him of his *Miranda* rights.

He admitted that the officers from Pickett County again advised him of his *Miranda* rights and told him why he was arrested after they had driven "down the road." He also admitted that the officers did not attempt to question him until after he was advised of his *Miranda* rights and the reason for his arrest. He admitted orally telling the officers that he was involved in the crime but stated that the information given by him to the officers was not true. He testified that he was sleepy and at times the officers talked "kind of loud" but they did not "grab him or rough him up" or otherwise intimidate him. He testified that he told the officers at first that he did not want to discuss the crime but they persisted in questioning him afterward. He stated that he changed his mind about discussing the crime because "he was tired and sleepy and scared" and the officers told him, "they wasn't going to leave me alone until I told them something."

At another point, he testified that he had been up two nights and a day before his arrest in Indianapolis but that he had taken pills in Indianapolis that would keep him awake. He explained that this was the reason that he did not sleep in the automobiles though the officers did not try to keep him awake. He did not state whether he slept while in jail on the day or night of November 11, prior to the arrival of the Tennessee officers on November 12. He

stated that he got tired after traveling "down the road."

The trial judge sustained the motion to suppress on findings as follows:

"THE COURT: I think I've reviewed this matter sufficiently. I've given everybody an opportunity to speak as much as they wanted to and I assume there's nothing more. I really don't think it boils down to a question, gentlemen, of whether I believe or disbelieve the officers as opposed to the Defendants. I think obviously there are some contradicting statements made by the officers and made by the Defendants.

But I think the way I see it, and the way I see it from what I understand the law to be, I see from the testimony of the State's witnesses that there's sufficient problems in the admissibility of these statements. Unfortunately, from the State's point of view.

\* \* \* \* \* \*

THE COURT: Danny Stearns was basically the oral statements made in the car coming down from Indiana. And I think without question that the officers went up there. They didn't read the warrant to him. They didn't tell him what he was charged with. They didn't read the warrant to him; they told him what he was charged with in a surreptitious sort of way I think. Played one statement against another. 'Darrel has already talked. You ought to talk.' Whether he said, 'I don't want to talk about it,' or not—and I don't think the officers said that he said that. He says he said that. I don't think the officers said that, but whether he said it or not, I doubt that if you take an eighteen year old, pick him up in the middle of the night, whether he's slept three days or been up three days, but pick him up in the middle of the night, take him into a big city jail, fingerprint and question or photograph him, and detain him for a period of time, at least the middle of the day, and then have officers from out of State come up and say, 'We've got a warrant for your arrest and we're going

to take you back to Tennessee. We'll get you one way or another.' 'Well, I'll just go.' And he's there in that police environment and there are three rather large people who are given weapons and he gets in the car with them—I don't know if there can be a voluntary waiver or not. It seems to me that's a rather coercive kind of atmosphere that would require a great showing on the part of the State or require them to show maybe more than the usual circumstance that it was in fact a voluntary waiver.

Simply signing a statement that the rights have been read and I understand them doesn't fit the bill as I understand what the Supreme Court's tried to say to us. And it just puts the burden on the State in that kind of situation to be a little more careful, a little more specific in obtaining a voluntary waiver. Simply reading the statement to him and getting him to sign it may not in all situations be sufficient, and probably is not in this case."

The defendant insists that the trial judge considered the "totality of the circumstances" in holding the defendant's waiver of rights to be involuntary. *State v. Morris*, 224 Tenn. 437, 456 S.W.2d 840 (1970). We agree that the trial judge did consider the "totality of the circumstances" in reaching his decision; however, we find that the trial judge erroneously applied the "totality of circumstances" rule in context with this record. He indicated that he did not deem it necessary to resolve the conflicts in the evidence of the State witnesses and the defense. With this conclusion, we disagree.

■ The officers testified, and the defendant admitted that he was advised of the charges against him before making a confession. There is nothing to indicate that the officers' advice to the defendant in this regard was "surreptitious." Though a prisoner's ignorance of the charge against him might conceivably be a circumstance worthy of consideration with respect to the "totality of circumstances," *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) does not require the interrogating officers to advise a defendant of the nature of the crime under investigation. In *Collins v. Brierly*, 492 F.2d 735 (3rd Cir. 1974), *cert. denied* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974), the court stated:

"We have serious reservations about an interpretation of *Miranda* ... which would require that before custodial interrogation begins, in addition to the mandated declarations, a statement must be made by the police as to the nature of the crime under investigation. That landmark decision was painstakingly specific in listing the basic constitutional rights which the police must propound to a suspect before he is questioned. No where is there the slightest indication that there must be included a warning about the nature of the crime which has led to the interrogation conference, what the penalty is for the offense, what the elements of the offense consist of, and similar matters.

\* \* \* \* \* \*

In a sense, all of these elements might conceivably enter into an 'intelligent and understanding' rejection of an offer for the assistance of counsel, but the simple answer is that *Miranda* does not by its terms go so far.

\* \* \* \* \* \*

It is not in the sense of shrewdness that *Miranda* speaks of 'intelligent' waiver but rather in the tenor that the individual must know of his available options before deciding what he thinks best suits his particular situation. *In this context intelligence is not equated with wisdom*." *Id.*, 492 F.2d at 738–39.

■ Also see *United States v. Anderson*, 175 U.S.App.D.C. 75, 533 F.2d 1210 (D.C.Cir. 1976); *United States ex rel Smith v. Fogel*, 403 F.Supp. 104 (N.D.Ill.1975); *United States v. Campbell*, 431 F.2d 97, 99 (9th Cir. 1970); *United States v. Hall*, 396 F.2d 841, 845–46 (4th Cir. 1968). Since the defendant admitted that he was aware of the charges against him, we find that the trial judge erroneously considered that the officers did not read the warrant to him, tell him what

he was charged with, and told him of the charges in a "surreptitious sort of way."

 Further, there was no evidence upon which to base the finding that the officers "played one statement against another" in procuring the oral or the written confession. Even if the police did "play one statement against another," this practice is not prohibited, especially when, as here, there is no misrepresentation as to the accomplice's statement. A police misrepresentation alone does not invalidate an otherwise voluntary confession. *Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 1424–25, 22 L.Ed.2d 684 (1969).

There is no evidence to indicate that the interrogating officers made such statements as "We'll get you one way or another." The fact that the officers were armed with pistols while transporting the prisoner from Indianapolis to Tennessee does not render the confession involuntary as a matter of law. There was no evidence of any threat or intimidation of the prisoner with the pistols.

We do not clearly understand the trial judge's statement that in this case the State should have been "a little more careful, a little more specific in obtaining a voluntary waiver" and that the reading of the *Miranda* warnings was insufficient. However, in this case, as in all others, the State need only prove by a preponderance of the evidence that the constitutional standards were met. *McPherson v. State,* 562 S.W.2d 210, 213 (Tenn.Cr.App.1977); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Further, the State was not required to go further than the mandate of *Miranda v. Arizona, supra.*

The critical issue presented by the evidence was whether the prisoner told the officers that he did not desire to waive his constitutional rights and the officers persisted in questioning him thereafter. *Miranda v. Arizona, supra.* The testimony of the three police officers and that of the defendant is in sharp conflict on this fact issue, and this conflict must be resolved by the trial judge upon remand.

It is well settled that the determination of fact by the trial court is binding upon appellate courts if there is any evidence to support it. *State v. Chandler,* 547 S.W.2d 918 (Tenn.1977). However, we find no evidence to support the findings of the trial judge in the foregoing particulars. His findings further articulate erroneous conceptions of the law as specified above. As stated above, the trial judge cannot decide the issue in the case without resolving the conflicts in the testimony of the witnesses who have testified.

This appeal was previously dismissed on the Court's motion because of defects in the transcript of the evidence as originally filed. However, we granted a petition to rehear filed by the State without requesting response from the defendant. See T.R. A.P. Rule 39(d).

The judgment of the trial court is reversed and the case is remanded for further proceeding consistent with this opinion.

DUNCAN and BYERS, JJ., concur.

ON PETITION TO REHEAR

The defendant has filed a Petition to Rehear. It contains a reargument of matters previously considered by the Court. The petition is respectfully denied.