357 A.2d 134
**COMMONWEALTH of Pennsylvania**

v.

**John YATES, Appellant.**

Supreme Court of Pennsylvania.
Submitted Jan. 13, 1976.
Decided May 12, 1976.

Joseph C. Santaguida, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Marianne E. Cox, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from the conviction of appellant, John Yates, brother and co-defendant of Stanley Yates,

of murder in the third degree in connection with the beating death of Oscar Ligon. In October, 1974, appellant was tried by a judge and jury and was found guilty of conspiracy and murder in the third degree. Post-trial motions were properly filed and denied by the court en banc. Appellant was sentenced to one and one-half to five years' imprisonment on the murder conviction and received a suspended sentence on the conspiracy conviction. This appeal followed.

The sole issue raised by the appellant is that his confession was obtained in violation of his constitutional rights and was therefore inadmissible at trial. The basis for appellant's argument is that his confession was physically coerced and that he was denied counsel during interrogation.

The facts surrounding the confession are as follows. On May 8, 1974, Oscar Ligon was accosted and beaten by John Yates, Stanley Yates, his brother, and two other individuals. The reason behind the attack was a previous altercation between the decedent and appellant's sister, Ophilia Yates. The beating was observed by Dora Johnson, the owner of the candy store where the beating took place.

On May 15, 1974, at 6:50 a. m., the Philadelphia police, acting upon information received from Dora Johnson, arrested appellant, John Yates, and his brother, Stanley, at their home in Philadelphia. Appellant arrived at the Police Administration Building at approximately 7:10 a. m. Appellant was alone between 7:10 and 7:20 a. m., at which time his interrogation began. Between 7:20 a. m. and 8:30 a. m., appellant was warned of his *Miranda* rights, which he waived, and he was then confronted with the statement of Dora Johnson, the witness to the beating. After being told of the Johnson statement, appellant admitted his involvement in the beating and he signed a handprinted statement admitting

his involvement at approximately 8:40 a. m. The police officer who conducted the interrogation and obtained the written confession testified that no physical threats or punishment were inflicted on appellant to obtain the confession and that appellant appeared alert, coherent and responsive during the interrogation. Based on the above facts, we are of the opinion that appellant's confession was prompted by his being confronted with an eyewitness statement, and not by police coercion. See *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898 (1975).

 The second part of appellant's argument is that he was denied access to an attorney during the interrogation. He bases this contention on the stipulation of the district attorney at the suppression hearing that if defense counsel testified, he would testify that appellant's mother contacted him at 7:30 a. m. the day of the arrest to retain his services for her two sons on the murder charges. Further, defense counsel would testify that he attempted to reach appellant at the Police Administration Building at approximately 8:00 that morning, but was informed that appellant had already given an inculpatory statement. The defense counsel attempted a second phone call at 9:30 a. m., but was informed that appellant had already given a statement.[1]

The district attorney did not stipulate to the truth of the statement, but only that the statement would be the substance of the defense attorney's testimony at appellant's suppression hearing. The Commonwealth produced evidence that appellant orally waived his *Miranda* rights at the beginning of the interrogation and again when the statement was reduced to writing, and that he initialed the specific *Miranda* questions and signed the

---

[1]. Testimony of Joseph Santiguida, Esquire, given at the trial of Stanley Yates, brother and co-defendant of appellant, differed as to the response he received from an unidentified policeman during the 8:00 telephone call. See *Commonwealth v. Stanley Yates,* 467 Pa. ——, 357 A.2d 133 (1976).

statement. At no time during the interrogation did appellant indicate he wished to cease the questioning and consult with an attorney.

In *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972), this court held that a person represented by counsel, even when such a fact was known to the interrogating officer, could validly waive his *Miranda* rights and the police could constitutionally continue the interrogation.

In the instant case, the evidence establishes that prior to any interrogation, appellant was warned of his *Miranda* rights, which he waived, and that prior to the formal statement, appellant again waived his *Miranda* rights.[2]

Judgment of sentence affirmed.

JONES, C. J., and EAGEN, J., concur in the result.

ROBERTS, J., filed a dissenting opinion in which NIX and MANDERINO, JJ., joined.

ROBERTS, Justice (dissenting).

I dissent. Appellant's attorney attempted to talk to appellant before he confessed.[*] The police deliberately led the attorney to believe that appellant had already confessed when in fact he had not. As a result of this intentional falsehood, appellant was denied the benefit of counsel's advice. In such circumstances, appellant's waiver of counsel during the interrogation is invalid and the resulting confession should be suppressed.

2. Compare *Commonwealth v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976), in which the court found an ineffective waiver of the defendant's *Miranda* rights. In *Bullard* the facts established that the defendant expressed a desire to exercise his *Miranda* rights, such desire being transmitted to the police by Judge Paul Dandridge of the Court of Common Pleas of Philadelphia. In the instant case, no such intention to exercise his *Miranda* rights was ever expressed by appellant.

* The attorney was retained by appellant's mother the morning of appellant's arrest. He was the family attorney and had represented appellant on previous occasions.

This Court faced a similar factual situation in *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972). There, the police were aware that appellant had retained counsel, that counsel had expressed a desire to be present during any interrogation, and that no significant delay would have occurred by awaiting his presence. Mr. Justice Nix, in a dissenting opinion which Mr. Justice Manderino and I joined, concluded that any waiver of counsel obtained from appellant during counsel's absence should be held invalid as a matter of law:

"In the case before us no interest of society would have been prejudiced if the questioning of the defendant had been deferred until the presence of counsel. If, in fact, there was a voluntary and considered judgment by the suspect to unburden his soul by discussing the incident with police officials there is no reason to believe consultation with counsel would stifle that desire. On the other hand, counsel's presence would restrain the suspect who was motivated by fear, intimidation, ignorance, or unreasoned impulse, which is the objective *Miranda* has mandated us to seek. The very presence of counsel during custodial interrogation is a bulwark against the compulsion of the surroundings and provides a credible witness for the defense if there is a subsequent issue as to the circumstances surrounding the questioning."

448 Pa. at 222–23, 292 A.2d at 310.

The facts in this case are even more compelling than those found in *Hawkins*. In *Hawkins*, there was no evidence that the police attempted to mislead counsel; here there is uncontroverted evidence that the police intentionally gave appellant's counsel false information in order to delay or frustrate appellant's prompt access to his counsel.

There is substantial support for a rule requiring the police to allow retained counsel prompt access to his cli-

ent upon request. The American Law Institute's Model Penal Code of Pre-Arraignment Procedure § 140.7 (1975) provides:

"An attorney undertaking to act as counsel for an arrested person shall have prompt access to such person, by telephone, and in person on counsel's arrival at any place where such person is detained. . . ."

The New York Court of Appeals, in an opinion cited with approval in *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964), established a rule similar to the one that should apply here:

"[T]he Due Process Clause of the Fourteenth Amendment . . . require[s] the exclusion of a confession taken from a defendant, during a period of detention, after his attorney had requested and been denied access to him. . . . It would be highly incongruous if our system of justice permitted the district attorney, the lawyer representing the State, to extract a confession from the accused while his own lawyer, seeking to speak with him, was kept from him by the police."

*People v. Donovan*, 13 N.Y.2d 148, 151, 243 N.Y.S. 841, 842, 193 N.E.2d 628, 629 (1963). See *People v. Hobson*, 39 N.Y.2d 479, 384 N.Y.S. 419, 348 N.E.2d 894, 19 Crim. L.Rptr. 2217 (June 9, 1976).

The Supreme Court of the United States has warned of the inherent coerciveness of custodial, incommunicado interrogations and the need for procedural protections for the accused. *Miranda v. Arizona*, 384 U.S. 436, 459, 86 S.Ct. 1602, 1619, 16 L.Ed.2d 694 (1966). Discussing its earlier opinion of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Court recognized that the coercive atmosphere of custodial interrogation could result in involuntary waiver of constitutional rights:

"The entire thrust of police interrogation [in *Escobedo*], as in all the cases today, was to put the defend-

ant in such an emotional state as to impair his capacity for rational judgment. The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak."

348 U.S. at 465, 86 S.Ct. at 1623.

The Court stated that the presence of the accused's attorney would be an adequate protection of the accused's rights:

"The presence of counsel, in all the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the [fifth amendment] privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion. . . .

"That counsel is present when statements are taken from an individual during interrogation obviously enhances the integrity of the fact-finding processes in court. The presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear, effectively, and in a way that eliminates the evils in the interrogation process."

384 U.S. at 466, 86 S.Ct. at 1623–24.

Here, the police extracted ". . . a confession from the accused while his own lawyer, seeking to speak with him, was kept from him . . .." These police tactics denied appellant his right to assistance of counsel. As the Supreme Court in *Escobedo* observed, once a confession is extracted, the trial becomes no more than an appeal from the interrogation, and a defendant's right to counsel becomes a mere formality. *Escobedo v. Illinois,*

supra, 378 U.S. at 487–88, 84 S.Ct. at 1624, 12 L.Ed.2d 977. In that "appeal," when the in-custody interrogation is witnessed only by police officers, the accused's chances of refuting their version of what occurred are miniscule because he must rely solely on his own testimony. See *Commonwealth v. Hawkins*, supra, 448 Pa. at 223, 292 A.2d at 311 (dissenting opinion of Nix, J., joined by Roberts and Manderino, JJ.)

Ours is not an inquisitorial system. The police may not deliberately deceive appellant's attorney and, by so doing, deny appellant his attorney's advice. Such tactics raise additional doubts concerning the already coercive atmosphere and deny appellant his sixth amendment right to assistance of counsel.

The Commonwealth must establish by the preponderance of the evidence that appellant's waiver of his right to counsel was voluntary, knowing and intelligent. See *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Commonwealth v. Bullard*, 465 Pa. 341, 348, 350 A.2d 797, 799 (1976). The only evidence of such a waiver in this record are the one word answers given by appellant while restrained in the interrogation room. In the circumstances of this case, when appellant's attorney was denied access to him and appellant was not informed of his attorney's availability, one word answers are insufficient to establish a valid waiver. As we recently stated in *Bullard*:

> "We do not find that the mere answering of questions by a man who fears police, given while handcuffed to a metal chair in an interrogation room constitutes the 'free choice' described in *Miranda* . . . ." (Footnote omitted.)

465 Pa. at 349, 350 A.2d at 800.

This record does not establish a "voluntary knowing and intelligent" waiver of appellant's right to counsel. The confession obtained by these police tactics should be suppressed and a new trial should be granted.

NIX and MANDERINO, JJ., join in this dissenting opinion.