410 A.2d 1213

COMMONWEALTH of Pennsylvania

v.

**John EVANS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1979.

Decided Dec. 21, 1979.

Reargument Denied Feb. 4, 1980.

40

Eugene H. Clarke, Jr., Philadelphia, for appellant.

Robert B. Lawler, Asst. Dist. Atty., Chief, Appeals Div., Paul Diamond, Asst. Dist. Atty., for appellee. .

Before EAGEN, C. J., and O'BRIEN, ROBERTS, MAN-DERINO and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, John Evans, was convicted in the Court of Common Pleas of Philadelphia of murder of the first degree, two counts of robbery and criminal conspiracy. He was sentenced to death for murder and received concurrent prison sentences of ten to twenty years for each count of robbery and one to two years for conspiracy. He appeals the judgment of sentence for murder to this court and has appealed the judgments of sentence on the other counts to the Superior Court, which certified these appeals to this court.

According to the Commonwealth's evidence, appellant, Leroy Smith, Marcus Hand and William Rainey were involved in an incident at Cavanaugh's Bar at 58th and Christian Streets in Philadelphia on December 16, 1975. Appellant entered the bar at approximately 7:30 p. m., walked by the bar to the men's room, stopped at a cigarette machine, and exited. He returned about twenty minutes later with his co-conspirators. Leroy Smith removed a pistol from an attache case, pointed it at the bartender and told him to "freeze." He told Corporal William Daniels, an

off-duty police officer and patron of the bar, to put his hands on the bar. Appellant put a pistol to Daniels' head and said "This is it." A gun was taken from the bartender and various items were taken from patrons, including a wallet taken from one Jesse Witherspoon. Daniels attempted to flee but appellant shot him in the back and another assailant shot him twice in the head. Daniels died of his wounds.

The assailants fled after the shooting, leaving Smith's attache case. The police arrived at the scene shortly thereafter. Patrons described the assailants and said that appellant wore a rabbit fur coat and that another assailant wore a brown military jacket and a white knit skull cap. The police looked in the attache case and found a sheet of paper on which was written "Terez 474-3136." The number was found to be listed under the name of Mabel H. Dunning at 5901 Carpenter Street. Police arrived at that address at 10:00 p. m. and, finding no one home, inquired of neighbors as to where they could find Dunning. They were directed to 5910 Carpenter Street, where they found her grandson, Jeffrey Partlow. He told them that Dunning was not at home, that he had a sister named Terez Land, who lived on the second floor at 5901, and that at 5:00 p. m. he had seen five men there. He gave descriptions matching two of those given by bar patrons. Dunning then arrived and said that she owned 5901, that she rented the second floor to Terez, and that Terez had several men staying with her, one of whom was wearing a "bunny rabbit coat." Dunning admitted the police to 5901. They went to a hallway on the second floor and saw a ceiling door to a crawlspace, near which they observed scuff marks on the walls and bits of plaster that had fallen to the floor. Dunning said that the plaster had not been there that morning. The police opened the crawlspace door and found appellant, Smith, Hand, and Rainey, all of whom they arrested.

It appeared that various items had been secreted in the crawlspace. Police informed another officer by telephone of what they had found and that officer obtained a search

warrant for the weapons and clothes involved in the crime and went to the house. The premises were searched and police found a man's rabbit fur coat, a military coat, and a white knit skull cap in a storage room. A garbage can at the entryway of the apartment contained the following items: the wallets and papers of Jesse Witherspoon and Corporal Daniels, a .357 magnum Ruger Blackhawk revolver, a .357 Smith & Wesson revolver, two .38 caliber special revolvers, the revolver taken from the bartender, a blackjack, ten and one-quarter inches of yellow coaxial cable, spent cartridges, and live rounds of .357 Magnum and .38 caliber ammunition. A search of the dining room revealed various ammunition and two jackets matching descriptions of clothing worn by the assailants.

Appellant claims he is entitled to a discharge because his trial did not commence within 180 days after the filing of the complaint, as required by Rule of Criminal Procedure 1100. The complaint was filed on December 17, 1975, and the 180th day following was June 14, 1976. The case was called for trial on June 11, but appellant's attorney was unavailable on that date because he was scheduled to try another case. The trial in the instant case started on June 17, immediately after the conclusion of the other trial. Rule 1100 provides that any delay resulting from the unavailability of the defendant or defense counsel is to be excluded when determining the time within which the trial must commence. We find that appellant's attorney was unavailable from June 11 to 17 and that that period of time is excludable. Therefore, Rule 1100 was not violated.

Appellant alleges various grounds for a new trial. One concerns the admission of a statement he gave to police after being arrested. He claims the statement should have been suppressed because it was the product of an unnecessary pre-arraignment delay. This claim on this record is without merit.

Appellant also argues it was improper to admit physical evidence obtained from the search of Terez Land's apart-

ment.   He claims there was not probable cause for the
issuance of the warrant.   Before reaching the merits of the
claim, we must determine whether appellant had standing to
object to the search.   The Commonwealth claims that he did
not have sufficient interest in the premises to have standing.
Appellant claims he was staying in the apartment with the
permission of Terez Land.   That claim is not disputed.   On
that basis, we find that he had standing.

In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4
L.Ed.2d 697 (1960), the court held a suspect had standing to
object to a search of an apartment that was not his when he
claimed the tenant was letting him use it.   He claimed to
have been there for "maybe a night."   The facts in the
instant case are similar in that appellant claimed to be an
overnight guest in Terez Land's apartment.   *Rakas v. Illi-
nois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), which
the Commonwealth relies upon, does not deny standing to
appellant.   The court held there that the test for standing
would be whether there was a legitimate expectation of
privacy, absent any claim of a possessory or proprietary
interest in the premises searched or property seized.   It
found the legitimate expectations of passengers in a car who
did not own or lease it did not give them standing to object
to a search of the glove compartment and the area under the
seat.   It said that "mere presence" was insufficient.   That
was a departure from its prior position.   See *Brown v.
United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208
(1973).   In *Rakas*, the court explicitly stated that *Jones* was
correct on its facts.   It analogized the situation of the
passengers in the car to that of a "casual visitor" to a
residence, who might have entered just before the search,
and distinguished it from that of an overnight guest.   We
find the present appellant had a legitimate expectation of
privacy so as to have standing to object to the search.

■ Proceeding to the merits, we find the search was
lawful, being based on a warrant obtained by probable
cause.   The police had taken statements from eyewitnesses
and were directed to the scene by the paper in the attache

44

case and the statement of Jeffrey Partlow. They had reasonable grounds to believe the clothing and weapons would be found on the premises. The above stated facts as given to the magistrate justified the issuance of the warrant. See *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979).

■■■ Appellant argues the trial court erroneously admitted testimony about his participation in a bank robbery in Philadelphia on July 29, 1975, which was several months prior to the incident involved here. Gene Bryant, a guard at the bank, identified appellant as having participated in the robbery and having taken a .357 Magnum from him. That was corroborated by James Porter, a teller. The same weapon was found eight hours after the shooting of Daniels in a garbage can two blocks from the scene. It was determined to be the gun with which Daniels was shot. Bryant identified it and produced a license and purchase receipt for it. The testimony was properly admitted. Evidence of a crime other than that for which the defendant is being tried is admissible if it tends to show the identity of the perpetrator of the crime charged in the trial. *Commonwealth v. Boykin*, 450 Pa. 25, 298 A.2d 258 (1972). In *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974), we found it proper for the mother of a murder defendant to testify that the defendant assaulted her and her family two to five hours after the murder with a gun found to be the murder weapon. The testimony tying the instant appellant to the murder weapon was similarly proper.

Appellant's next argument is that the trial court improperly allowed the prosecutor, while cross-examining him, to refer to a statement that had been suppressed. There is a question as to whether the statement was in fact suppressed. In any event, appellant has waived his claim by failing to object to the reference when it was made.

■■■ Appellant claims it was improper for the court to allow the Commonwealth to reopen its case on rebuttal. After the Commonwealth had rested its case on rebuttal,

defense counsel said he would have a witness on surrebuttal. Because of the time, the court recessed for the day, but the next day counsel decided not to present any surrebuttal. The Commonwealth was then allowed to present another rebuttal witness. Appellant had testified on his own behalf that he had been in Chicago and had just flown to Philadelphia on American Airlines on the day of the murder. The Commonwealth reopened its rebuttal case to have an employee of the airline testify that the airline did not fly from Chicago to Philadelphia. The prosecutor said she did not know until the time of appellant's testimony that such evidence would be relevant and that she was unable to present it sooner because of the time required for the airline to check its records. A court has the discretion to allow a case to be reopened. *Commonwealth v. Deitch Co.*, 449 Pa. 88, 295 A.2d 834 (1972). We find the prosecutor adequately explained the need to reopen and there was no abuse of discretion.

▮ There are no grounds for a discharge or new trial. There remains the question of the legality of the death sentence. Appellant contends, and the Commonwealth concedes, that the sentence was unlawful because it was imposed under a statute that was declared to be unconstitutional. *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977). The only lawful sentence for the murder conviction is life imprisonment.

The judgment of sentence imposing the penalty of death for murder of the first degree is vacated and the case is remanded for resentencing. The remaining judgments of sentence are affirmed.

NIX and LARSEN, JJ., did not participate in the consideration or decision of this case.

MANDERINO, J., did not participate in the decision of this case.