462 A.2d 1329

**COMMONWEALTH of Pennsylvania**

v.

**Robert LARK, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 4, 1982.

Filed June 24, 1983.

Petition for Allowance of Appeal Granted Nov. 22, 1983.

---

242

244

William R. Solvibile, Philadelphia, for appellant.

Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, ROWLEY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant was arrested and charged with robbery, theft by unlawful taking and/or disposition, theft, receiving stolen property, aggravated assault, simple assault, recklessly endangering another person and possession of instruments of crime. Appellant's motion to suppress physical evidence and a statement were denied. Following a jury trial, appellant was convicted of robbery and possession of an instrument of crime. Post-trial motions were denied and appellant was sentenced to a total term of imprisonment of twelve and one-half to twenty-five (12½ to 25) years. This

appeal followed. Appellant's brief lists eight issues to be resolved on appeal; we will review his first three contentions as one issue. A brief summary of the factual and procedural history of this case will be helpful.

A real estate broker was robbed on December 28, 1979, by an actor wearing a stocking over his face. The victim however recognized appellant from his build and voice as the culprit; appellant had been a tenant of the victim and had been in the real estate office on a number of occasions. Among cash and other items that were taken, the actor directed the victim to make out a check in the name of "James Ira Health"; the actor showed a social security card bearing that name.

Appellant had been wanted by the authorities on unrelated charges. Information was received concerning appellant's future activities and surveillance was established. Appellant arrived as expected and detecting the presence of police, fled and proceeded to take refuge in an occupied residence. Appellant contacted a lawyer by telephone who arrived at the above residence. Appellant then surrendered to the police. Later the attorney stated to the police that appellant did not wish to make any statement. The attorney left. The police advised appellant of his *Miranda* Rights.[1] Appellant allegedly refused to talk about the other unrelated crime but would discuss other matters; i.e., the current set of charges. He indicated he did not want to talk to an attorney. Appellant confessed to the robbery of the real estate office.

I. Should Appellant's Confession Have Been Suppressed?

Appellant's argument is threefold. He argues that any statement given without counsel present and after counsel had been retained should have been suppressed. The police should not have continued interrogation after appellant invoked his right to remain silent absent a request by

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

appellant. Finally, he contends that he did not waive his *Miranda* rights.

Appellant first argues that the suppression court erred in failing to suppress certain statements he made to the police on the day of his arrest. Although there is no single litmus-paper test for determining the validity of a confession, the parameters of appellate review of a suppression court's ruling of admissibility are well-defined.

The suppression court, which hears and evaluates the testimony, is required to make findings of fact and conclusions of law ... The court must determine whether the Commonwealth has established by a preponderance of the evidence that the confession was voluntary and that the waiver of constitutional rights was knowing and intelligent ... Our responsibility on review is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." .. In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kichline*, 468 Pa. 265, 279, 361 A.2d 282, 290 (1976) (cites omitted). We will consider all of the attendant circumstances to determine if it was sufficiently demonstrated that appellant's decision to speak was the product of a free and unconstrained choice and that the waiver of his constitutional rights was a knowing, intelligent and voluntary choice. Id.

*Commonwealth v. Rigler*, 488 Pa. 441, 412 A.2d 846 (1980). Here the suppression court found that there was no agreement by the police not to interrogate appellant and therefore found no basis for suppressing his statements (N.T. Suppression pp. 218–219).

In reviewing the record in view of the above standard, we find the following events led up to appellant's admission. Appellant acquired the attorney's name through the telephone directory yellow pages. (Id. pp., 165, 168) After

appellant was taken to the police station he consulted with private counsel. As counsel was leaving, the attorney advised the police authorities that appellant did not wish to make a statement. (Id. p. 98) The same witness responded affirmatively when asked whether counsel informed him not to interview appellant as he did not wish to speak to the police. (Id. p. 110) The attorney who aided appellant in surrendering testified that he left after the police assured him appellant would not be interrogated. (Id. pp. 122, 134, 135) A second detective testified in rebuttal. He testified that the attorney just informed him that appellant did not wish to make a statement. (Id. p. 168) The police did not assure counsel that they would not question appellant. (Id. pp., 169, 173)

Resolving the discrepancies between the recollections of the police officers and private counsel is a matter for the suppression court. This court may not substitute its own finding for those of the lower court especially in weighing the credibility of the witnesses. *Commonwealth v. Stamm*, 286 Pa.Superior Ct. 409, 429 A.2d 4 (1982). As the record supports the court's findings that no agreement existed between the investigating officers and counsel to forego questioning, we may not supplant its findings with our own. Therefore the issue devolves into whether when counsel informs the police that a suspect wishes to exercise his or her option to remain silent, the police may nonetheless question the suspect.

On this point there has been substantial disagreement among the jurists of this Commonwealth. We find it unnecessary to go into a detailed summation of this dispute in jurisprudence as it has been reviewed on numerous occasions. We need only offer a brief glance of the split in opinions. In *Commonwealth v. Rigler*, 488 Pa. 441, 412 A.2d 846 (1980) four justices agreed that a defendant's statement given in the absence of counsel was admissible even though counsel had informed the police that the defendant had been advised to remain silent; two justices joined in a dissent. In *Commonwealth v. Lark*, 482 Pa.

292, 393 A.2d 1112 (1978), three justices, in an opinion for reversal, suggested a pro se rule requiring the presence of counsel when interrogation takes place after counsel has been retained. A fourth justice, finding that the police had explicitly and clearly assured counsel that no questioning would take place, held the violation of such agreement required a new trial. Only three justices in *Commonwealth v. Hilliard*, 471 Pa. 318, 370 A.2d 322 (1977) held that once counsel has undertaken to represent a suspect, a defendant could not waive his right to counsel unless the attorney was present. While in *Commonwealth v. Yates*, 467 Pa. 362, 357 A.2d 134 (1976), two justices, with another two concurring in the result, found that a represented defendant could waive his or her Miranda rights. Three justices dissented. Finally, in *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972), the Supreme Court voted 4 to 3, finding that the authorities could question without counsel being present, a suspect knowing he had retained counsel.

■ In reviewing the above five cases it becomes evident that the view that a represented defendant cannot waive counsel outside of counsel's presence, has never attained the majority position in this Commonwealth. As in *Hawkins* (1972), *Rigler* (1980) has expressed the majority view that a defendant can waive the benefit of having retained counsel present, without counsel's present advice. Such majority, though not unanimous is nonetheless the state of the law of this Commonwealth and this court is bound by it. Such holding was followed by this court in *Commonwealth v. Lowery*, 276 Pa.Superior Ct. 569, 419 A.2d 604 (1980); *Commonwealth v. Allen*, 272 Pa.Superior Ct. 345, 349, 415 A.2d 1231, 1232 (1979). In *Allen*, Justice Manderino, sitting as a judge of this court, filed a concurring opinion which is a commentary on the state of the law. Justice Manderino, one of the vocal dissents in the above Supreme Court cases, stated:

I concur in the result reached by other members of the panel in this case since the panel, sitting as a Superior Court panel, follows the decisions of the Supreme Court.

When sitting as a member of the Supreme Court, as distinguished from my present duties, sitting by special designation as a member of the Superior Court, I have maintained contrary views.

272 Pa.Superior Ct. at 348, 415 A.2d 1231 (Citations deleted). Therefore, we find that appellant could waive his various *Miranda* rights without the benefit of counsel. We must now determine if such waiver was valid.

*Miranda* requires only that a waiver of such rights be made voluntarily, knowingly and intelligently. In evaluating such a waiver a court must look to the totality of the surrounding circumstances. We must look to the duration and method of interrogation; the conditions of confinement; the displayed attitude of the questioning officers; the suspect's physical and psychological condition and any other influence which may weaken a person's resistance to suggestion or undermine his free will. *Commonwealth v. O'Bryant,* 479 Pa. 534, 388 A.2d 1059 (1978); *Commonwealth v. Lowery,* supra. A waiver of one's *Miranda* rights will not be presumed, but must be explicit.[2] *Commonwealth v. Bussey,* 486 Pa. 221, 404 A.2d 1309 (1979);

2. There can be no question here that the alleged waiver was explicit. Appellant gave the following responses.

Q. "Do you understand that you have a right to keep quiet …?"
A. "Sure do."
Q. "Do you understand that anything you san (sic) can and will be used against you?"
A. "Yes."
Q. "Do you want to remain silent?"
A. "No, I'll talk to you about anything but I aint talking about any murders."
Q. "Do you understand that you have a right to talk with a lawyer …?"
A. "Yeah."
Q. "Do you understand that if you cannot afford … a lawyer …?"
A. "Yeah."
Q. "Do you want … to have a lawyer …?"
A. "I already talked to a lawyer and I ain't sure if I'm going to use him or not. He might not be as crack as I thought. I know what I'm doing."
Q. "Are you willing to answer question …?"
A. "Sure, ask all you want. But I ain't giving no written statement."

*Commonwealth v. Christmas,* 281 Pa.Superior Ct. 114, 421 A.2d 1174 (1980). In reviewing the Commonwealth's evidence and so much of appellant's that remains uncontradicted, and in evaluating the validity of the waiver of appellant's constitutional rights, we find the following summary of testimony to be determinative.

The investigating officers testified that appellant was given *Miranda* warnings, and appellant waived them as to the current case but refused to talk about any murder. (N.T. Suppression, pp. 100–102, 170–171). Counsel testified that he did not object to the police giving the required warnings because appellant knew his rights. (Id. at 136) Appellant himself, testified that the police twice advised him of his rights; and he himself admitted that he was aware of his constitutional rights. (Id. at 151). According to the detectives appellant insisted that nothing be written down during the interview. (Id. at 107, 171) It was the testimony of the detectives that appellant proceeded to waive his *Miranda* rights. Appellant claimed he told the officers he had nothing to say and insisted that he never gave any statement regarding the present case. (Id. at 144). He did state his belief that the prosecutor would "mess up the case", but he would beat it anyways because he did not do it. (Id. at 155). The officers testified that the only limitation appellant placed upon the conversation was that he would not talk about any murders. (Id. at 102, 177) The discourse was described as "extemporaneous chatter" or "rambling conversation." (Id. at 106, 170). He never asked to terminate the conversation, (Id. at 171); nor did he request return of counsel. (Id. at 172)

Here appellant was questioned intermittently for three and one half (3½) hours. (Id. at 104) During this period four interviews took place, each separated by a period in which appellant was left alone. During these questioning periods, two detectives were present and for part of the time, an assistant district attorney was involved. On two occasions appellant declined an offer of nourishment but he

(N.T. Suppression, pp. 102–103).

was permitted to use the restroom and he did take drinks of water. (Id. at 104, 106) The only threat that appellant claimed was made was one regarding charges pending "down south." (Id. at 146).

Reviewing the above testimony we find that appellant voluntarily, intelligently and knowingly waived his rights. The duration and conditions of the interrogation were not such as to undermine resistance. The discourse was free flowing and not forced. Offers were made to accommodate appellant's physical needs. Except for one reference to a threat of charges pending in another jurisdiction, appellant himself did not claim any influence that could have overborne his will.[3]

II. Did the Lower Court Abuse its Discretion in Failing to Grant the Appellant's Request for a Lineup?

Appellant, prior to the preliminary hearing, requested a "voice lineup." The basis for such request was that the actor wore a mask and the victim had identified the appellant as the actor by his voice, physical build and mannerisms. The victim had had numerous business dealings with the appellant. Appellant claims he was prejudiced by the denial of a lineup and such prejudice was not cured by a precautionary instruction.

A criminal defendant does not have a constitutional right to a line-up. *Commonwealth v. Cornish*, 471 Pa. 256, 370 A.2d 291 (1977); and *Commonwealth v. Steffy*, 264 Pa.Superior Ct. 110, 399 A.2d 690 (1979). While a line-up should be granted where identification is at issue, failure to do so does not require release. Instead, in certain circumstances, the trier of fact should be informed that the defendant "had been denied the opportunity for a more objective identification and for that reason the subsequent less reliable identification could be viewed with caution."

---

**3.** We must note the novelty and precariousness of appellant's position. At the suppression hearing, he claims he did not give any inculpatory statement; here he claims any confession was involuntary, unintelligently and unknowingly entered. These two positions are inherently and logically inconsistent.

*Commonwealth v. Sexton,* 485 Pa. 17, 25, 400 A.2d 1289, 1293 (1979).

██ The court's charge to the jury regarding identification testimony did not include any comment on the denial of the prehearing lineup. (N.T. Trial pp. 4.171–74). Following the charge the court inquired of trial counsel whether either desired an additional or clarifying charge. Defense counsel suggested a charge concerning an element of one of the crimes charged. The court amended its charge accordingly and no further charge was requested.

Since appellant did not request such charge, nor make a timely and specific objection to the omission of an instruction regarding the denial of the prehearing lineup, it has not been preserved for review. *Commonwealth v. Rineer,* 310 Pa.Superior Ct. 241, 456 A.2d 591 (1983); *Commonwealth v. Linder,* 284 Pa.Superior Ct. 327, 336 n. 5, 425 A.2d 1126, 1130 n. 5 (1981); see Pennsylvania R.Crim.P. 1119(b).

III. Did the Trial Court Err in Redacting the Statement of Appellant?

██ Outside of the presence of the jury, the Commonwealth brought to the court's attention the following problem. One of the detectives (referred to in part I) was scheduled to take the stand and testify concerning appellant's waiver of *Miranda.* When appellant had been asked if he wished to give a statement, appellant responded "I won't talk to you about the murder, but I will talk to you about everything else." The prosecutor, fearing that a reference to other criminal activity could present problems, suggested that the question and/or answer be reworded. The court indicated it would permit the assistant district attorney to ask "Was Mr. Lark prepared to speak about the robbery?", to which the witness would answer "yes". Defense counsel initially opposed such measure but subsequently reluctantly countenanced the proposed redaction when the court inquired what counsel would suggest. (N.T. Trial pp. 3.3–3.7) Defense counsel renewed his concern at trial. The court responded by directing the detective to merely quote the appellant as saying "I'll talk to you about

anything." (Id. at 348–349) Appellant now contends that the redacted statement was prejudicial to him since the jury was given the impression that appellant was willing to talk to the police.

> Redaction in its broad sense indicates any revision or editing but in a strict legal sense has come to refer to the deletion, and any other change in a confession, to strike out any reference by one joint defendant to any co-defendant.

*Commonwealth v. Johnson*, 474 Pa. 410, 411 n. 1, 378 A.2d 859 n. 1 (1977). See also *Commonwealth v. Guess*, 266 Pa.Superior Ct. 359, 404 A.2d 1330 (1979) and *Commonwealth v. Young*, 263 Pa.Superior Ct. 333, 397 A.2d 1234 (1979). We believe the use of the word "redaction" in the current situation is an appropriate use of the word even though we are not dealing with a reference by one defendant regarding a co-defendant. *Johnson* held that questions over redaction fell within the discretion of the trial court and must be decided on a "case by case basis."

We do not find any abuse of the trial court's discretion. Appellant does not indicate exactly what prejudice he suffered: though we may extrapolate that he feared the jury would find, if advised that appellant freely conversed, that any admission or confession was voluntary. If such was appellant's fear, we are not persuaded. As indicated in part I, we found appellant's confession was admissible; therefore any prejudice resulting therefrom must be endured, as prejudice alone will not block the admission of relevant and otherwise admissible evidence.[4]

IV. Did the Trial Court Err in Admitting into Evidence the Holster and Ammunition Pouch which Appellant was wearing at the Time of His Arrest?

When appellant surrendered to the police he was wearing a shoulder holster with an attached ammo pouch. The Commonwealth sought to introduce testimony pertaining to

---

**4.** As suppression of appellant's confession was properly denied, the alternative of allowing the verbatim response into evidence would have clearly been more damaging to appellant's case.

the holster and the holster itself into evidence. Appellant objected both to the testimony and the introduction of the holster. (N.T. Trial, pp. 3.51, 3.146) The prosecution contends the holster was probative as appellant was seen entering the residence with a weapon in the holster. Police subsequently located a hand gun inside the house; as it fit the holster, the Commonwealth argues it indicates that the gun belonged to appellant. The victim of the robbery identified this gun as being similar to the one used in the robbery, pointing to appellant as the perpetrator of the crime. Appellant disagrees, contending the holster lacked probative value and was therefore irrelevant and prejudicial.

A weapon shown to have been in a defendant's possession may be properly admitted into evidence even though it cannot be identified positively as *the* weapon used in committing a crime; it may tend to prove that the defendant had a weapon similar to the one used. Any uncertainty that the weapon is not the actual weapon used in the crime, goes to the weight of such evidence. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981); *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). Similarly, testimony and demonstrative evidence which may identify a defendant as having possession of a particular firearm is admissible. *Commonwealth v. Evans*, 488 Pa. 38, 410 A.2d 1213 (1980). In the current case the holster and ammo pouch [5] tended to confirm, that appellant had robbed the real estate broker. Compare, *Evans*. Therefore, it was properly admitted into evidence.

 V. Should the Court have Directed a Mistrial When a Reference was made to a Book Recovered from Appellant which had been submitted to the Federal Bureau of Investigation?

The police recovered from the residence in which appellant had taken up refuge, a blue canvas bag contain-

5. The ammo pouch contained 13 rounds of live .32 caliber automatic ammunition; the gun in question was a .32 caliber automatic.

ing, among other things, a book containing phone numbers. At trial one of the detectives, referring to such book, indicated it had been submitted to the F.B.I. Defense counsel moved for a mistrial, which was denied. No further inquiry into the matter occurred. Appellant complains that the reference implied that he had prior contact with the law enforcement officials.

"To warrant a characterization as prejudicial the testimony must convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Commonwealth v. Banks*, 454 Pa. 401, 411, 311 A.2d 576, 581 (1973); quoted in *Commonwealth v. Starks*, 484 Pa. 399, 408, 399 A.2d 353, 357 (1979). "To conclude [here] that appellant had committed prior crimes from a detective's single statement that [the book was submitted to the F.B.I.], the jury would have to indulge in gross speculation. Accordingly, the trial court did not err in denying this motion for mistrial." *Commonwealth v. Riggins*, 478 Pa. 222, 231, 386 A.2d 520, 524 (1978).

VI. Did the Court Err in Admitting Altered Pictures of Appellant Holding a Weapon?

The police recovered three photographs of appellant from the blue canvas bag referred to in the prior issue. The pictures showed appellant wearing a shirt reading "Sugarbear", a nickname by which appellant was known, and holding various weapons. In the first picture appellant had a gun dissimilar to the one used in the robbery; the court directed that the gun be covered over. The second photograph showed appellant holding the prior gun and one similar to the one used in the robbery; the court had the first gun covered over. The third picture had appellant holding a firearm similar to that used in the robbery; this photograph remained unexcised. Appellant simply contends that the photographs "served no purpose other than to inflame the jury."

It is argued that the pictures were inflammatory and prejudicial. In determining the admissibility of such evidence a trial judge should first determine whether the photographs are inflammatory; if they are found not to be the admissibility of the pictures is to be governed by the normal considerations of relevancy. If the trial judge finds that the proffered pictures are of an inflammatory nature, the inquiry must then proceed to determining whether their evidentiary value outweighs the likelihood that they might prejudice the jury.

*Commonwealth v. Wade,* 480 Pa. 160, 171, 389 A.2d 560, 565–566, (1978) (Citations omitted). First we must comment upon the court's excising portions of the photographs. Such was not only permissible but was commendable as the court removed any depiction which would unfairly affect the jury. See *Commonwealth v. Brueckner,* 458 Pa. 39, 45, 326 A.2d 403, 406 (1974); and *Commonwealth v. Hoss,* 445 Pa. 98, 115, 283 A.2d 58 (1971); *Commonwealth v. Collins,* 440 Pa. 368, 371, 269 A.2d 882 (1970).

Inflammatory evidence may be defined as that evidence which tends to inflame the minds of the jurors. *Commonwealth v. Chacko,* 480 Pa. 504, 506, 391 A.2d 999, 1001 (1978); *Commonwealth v. Millard,* 273 Pa.Superior Ct. 523, 533, 417 A.2d 1171, 1177 (1979). The record here shows no undue prejudice against appellant nor any inflammation of passions against him as a result of the photographs. Therefore, we find no abuse of the trial court's discretion. Moreover, contrary to appellant's claim, the pictures were relevant. The blue canvas bag contained certain items identified as belonging to "Sugarbear" as well as items which could tend to establish that appellant was responsible for the robbery. The pictures of him wearing a shirt which read "Sugarbear" clearly suggests he owned the blue canvas bag and was involved in the robbery. Compare, *Commonwealth v. Gore,* 262 Pa.Superior Ct. 540, 556, 396 A.2d 1302, 1309 (1978). And finally, as we held in part IV above, the fact that appellant had a weapon similar to the one used in the robbery is clearly relevant.

VII. Should the Trial Court have Declared a Mistrial When, Upon Cross-examination, the Prosecutor remarked about Media Coverage of Appellant's Arrest?

 The attorney who assisted Mr. Lark in surrendering, was called as a defense witness at trial. Upon cross-examination the district attorney inquired about the presence of television cameras at the time of surrender. Defense counsel objected and moved for a mistrial. The objection was sustained; a mistrial was refused; and no cautionary instruction was requested. (N.T. Trial, pp. 4.15–4.16) Appellant here argues that the above "prejudicial comments" somehow placed him in an "untenable position of having the jurors believe that there were T.V. cameras present at the time of his arrest." (Appellant's Brief, p. 14) He insists the only way to remedy the situation is to grant him a new trial.

While we may question the relevancy of such line of inquiry, we fail to understand what prejudicial impact it could have. Appellant has failed to indicate what adverse inferences the jury could have drawn. Nonetheless, assuming appellant was so prejudiced he is not entitled to any curative measure here. Our reasoning in *Commonwealth v. Harris,* 297 Pa.Superior Ct. 308, 315, 443 A.2d 851, 854 (1982) controls here.

Such a reference does not automatically require a new trial. Instead, a new trial is only necessitated where an improper comment was not curable by curative instruction or where it is curable but such was not given and the trial court and trial counsel could not reasonably conclude that such would reinforce the inference. In the context of this current case, we find that a curative instruction could have negated the inference, but instead counsel failed to request such instruction, possibly concluding reasonably that such would reinforce the inference. *Commonwealth v. Bunting,* 284 Pa.Superior Ct. 444, 426 A.2d 130 (1981). As appellant did not request a curative instruction, he may not on this appeal complain of prejudi-

cial error. *Commonwealth v. Humphreys*, 267 Pa.Superior Ct. 318, 406 A.2d 1060 (1979).

Judgment of sentence affirmed.

SPAETH, J. files a dissenting opinion.

SPAETH, Judge, dissenting:

I believe that a new trial should be granted. For I agree with appellant's argument that "[o]nce a lawyer for the defendant informs the police that the defendant desires to exercise his Fifth Amendment privilege, any further statement obtained from the police as a result of further interrogation instituted by the police is constitutionally impermissible and inadmissible." Brief for appellant at x.[1]

Immediately before surrendering to the police, appellant telephoned an attorney, Lewis S. Small, and requested his assistance. N.T. 118–19. Small went to the police station, and following his arrival, appellant conferred with him and his associate, Steven Margolin, for approximately 20 minutes. N.T. 98; 118–19. As Small and Margolin left the police station, Small told the detectives that appellant did not want to make a statement. N.T. 98–99; 122. Within moments of Small's and Margolin's departure, the detectives went to appellant, advised him of his *Miranda* rights, and asked him whether he wanted to remain silent. N.T. 100–02. Appellant said he was willing to talk, and confessed to having committed the robbery. At his trial his confession was introduced into evidence against him.

Small's statement to the detectives that appellant did not want to make a statement was an effective assertion of appellant's right to remain silent. *Cf. Brewer v. Williams*, 430 U.S. 387, 405, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, *reh'g denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977). (Defendant "effectively asserted his right to [have] counsel [present during interrogation] by having secured attorneys

1. The majority fails to address appellant's argument, instead observing that "the suppression court found that there was no agreement by the police not to interrogate appellant …." At 1332. Whether there was agreement, however, is irrelevant.

... both of whom, *acting as his agents,* had made clear to the police that no interrogation was to occur during the journey." (emphasis added); *Commonwealth v. Rigler,* 448 Pa. 441, 412 A.2d 846 (1980), *cert. denied,* 451 U.S. 1016, 101 S.Ct. 3004, 69 L.Ed.2d 387 (1981). (Because neither defendant *nor his attorney* asserted defendant's right to remain silent, prohibition against subsequent interrogation inapplicable); *Commonwealth v. Bullard,* 465 Pa. 341, 347, 350 A.2d 797, 799 (1976) (Where judge advised police that they were not to talk to defendant until his family obtained a lawyer, "[t]he record show[ed] that, *through th[is] intermediar[y],* appellant expressed a clear desire not to be questioned until counsel was obtained for him....") (emphasis added).

When a defendant asserts his right to remain silent, the police are forbidden from interrogating him further unless: (1) the defendant initiates further communication, *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981); *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694, *reh'g denied sub nom. California v. Stewart,* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966); *Commonwealth v. Shepherd,* 269 Pa.Super. 291, 409 A.2d 894 (1979); *Commonwealth v. Nahodil,* 462 Pa. 301, 341 A.2d 91 (1975); or (2) a sufficient period of time has elapsed, *Commonwealth v. Crosby,* 464 Pa. 337, 346 A.2d 768 (1975) (Police may initiate interrogation more than two weeks after defendant asserts right to remain silent); *Commonwealth v. Frison,* 301 Pa.Super. 498, 448 A.2d 18 (1982) (Police may initiate interrogation three months after defendant asserts right to remain silent). Here, within moments of appellant's assertion of his right to remain silent the police went to him, advised him of his *Miranda* rights, and asked him whether he wanted to remain silent. The only question, therefore, is whether this conduct of the police constituted interrogation. For if it did, appellant's resulting confession was obtained in violation of *Miranda* and should not have been introduced into evidence at his trial. *Miranda v. Arizona, supra.*

It is clear to me that the conduct of the police did constitute interrogation. *Miranda* warnings are required only as a prelude to custodial interrogation, *Miranda v. Arizona, supra,* and the police could have had no other purpose in mind when they gave appellant the warnings except to elicit a statement. Moreover, the United States Supreme Court has held in *Edwards v. Arizona, supra,* that police conduct indistinguishable from the police conduct here constituted interrogation. In *Edwards,* the defendant asserted his right to remain silent. The next morning, police detectives went to see him at the jail. Over Edwards's protest, the jail guard took him to the detectives. They told Edwards that they wanted to speak with him, and they advised him of his rights. Edwards then made an inculpatory statement. The Court held that this conduct constituted forbidden interrogation. Since the conduct of the police here is indistinguishable from the police conduct disapproved in *Edwards,* appellant's confession was obtained in violation of *Miranda* and should not have been introduced into evidence at his trial.

A new trial should be granted.