J-S68031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GORDON OLIVER-WILLIAMS | |
| Appellant | No. 2941 EDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006727-2012

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GORDON OLIVER-WILLIAMS | |
| Appellant | No. 2944 EDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007931-2012

BEFORE: BENDER, P.J.E., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.: **FILED DECEMBER 28, 2015**

Appellant, Gordon Oliver-Williams, appeals *pro se*[1] from the

September 5, 2014 aggregate judgment of sentence of 11 to 25 years'

---

[1] Prior to trial, the trial court conducted an extensive on the record colloquy, pursuant to Pennsylvania Rule of Criminal Procedure 121, after which, the
*(Footnote Continued Next Page)*

imprisonment, plus 5 years' probation, imposed after he was found guilty of two counts of aggravated assault and one count each of possession of an instrument of a crime (PIC), possession of a weapon, terroristic threats, and escape.[2] After careful review, we affirm.

The trial court summarized the relevant factual and procedural background of this case as follows.

> On May 25, 2011, between 1:00 and 2:00 in the morning, the victim, Mr. Anthony Harmon ("Mr. Harmon"), was at his home located at 1105 Pine Street in Darby, PA. For reasons that remain unknown [Appellant], left a message on Mr. Harmon's phone requesting that Mr. Harmon fight him. [Appellant], who lived across the street was a close friend of Mr. Harmon prior to this incident and on numerous occasions spent time in Mr. Harmon's household with Mr. Harmon and his family. As a result of the phone message left by [Appellant], a brief argument occurred between [Appellant] and Mr. Harmon on the front porch of Mr. Harmon's house. The argument eventually was taken into the backyard where Mr. Harmon's mother, Zina Harmon ("Ms. Harmon"), broke up the fight after noticing [Appellant] constantly reaching into his back pocket in an effort to possibly retrieve something.

> Subsequently to the first argument, Mr. Harmon along with cousin Colin Wesley ("Mr. Wesley") left the property for about an hour. Upon returning, Mr. Harmon noticed [Appellant] walking

_(Footnote Continued)_ _____

trial court permitted Appellant to proceed *pro se*, and appointed Thomas Dreyer, Esquire as Appellant's standby counsel. **_See generally_** N.T., 7/29/13, at 5-30.

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 907(a), 907(b), 2706(a)(1), and 5121(a), respectively.

outside Mr. Harmon's house shouting insults at Mr. Harmon's family who were outside on the porch. [Appellant] again reiterated his demand to fight Mr. Harmon and suggested that the two walk down the street away from Mr. Harmon's house to do so. Mr. Harmon and Mr. Wesley followed [Appellant] about two houses down from Mr. Harmon's property, where [Appellant] proceeded to stab Mr. Harmon in the chest with a pocketknife. Mr. Harmon did not see the weapon on [Appellant] prior to being stabbed nor did Mr. Harmon or Mr. Wesley have any weapons on their persons.

Following the stabbing, Mr. Wesley and Mr. Harmon's sister, Ms. Brittany Robinson ("Ms. Robinson"), gave chase of [Appellant] who fled the scene. Mr. Harmon proceeded to pull the pocketknife out of his chest and placed it in his pocket. Mr. Harmon then attempted to drive himself to the hospital. Shortly after getting behind the wheel of the car Mr. Harmon crashed the vehicle into a pole.

Officer Brian Evans …, an [o]fficer of the Darby Borough Police Department, arrived at the scene of the accident and testified that when he arrived Mr. Harmon was lying face down outside the car. Officer Evans had an opportunity to speak with Mr. Harmon who informed Officer Evans that he had been stabbed prior to the car accident. Officer Evans noticed that Mr. Harmon's shirt was covered with a large amount of blood. Prior to the ambulance arriving, Officer Evans removed a knife from Mr. Harmon's pocket, which Officer Evans believes was the knife that was used to stab Mr. Harmon.

An ambulance eventually arrived at the scene and took Mr. Harmon to University of Pennsylvania Hospital. Dr. Patrick Kim ("Dr. Kim"), attending surgeon at University of Pennsylvania Hospital, treated Mr. Harmon upon arrival. Dr. Kim testified that when Mr. Harmon was brought to him[,]Mr. Harmon was in [h]emorrhagic shock. Hemorrhagic shock is a condition of life-threatening bleeding,

- 3 -

which causes changes in vital signs. Dr. Kim determined that the wound to the chest was the cause of Mr. Harmon's hemorrhagic shock. Dr. Kim also testified that the wound to the chest of Mr. Harmon was in his expert opinion consistent with that of a stab wound. Dr. Kim further stated that [h]emorrhagic shock could be a life-threatening event without proper or immediate treatment. Dr. Kim placed a tube in Mr. Harmon's chest in order to remove the blood that had built up as a result of the stab wound. After the tube failed to adequately drain out the necessary amount of blood, Dr. Kim determined that an emergency surgery known as a thoracotomy needed to be performed. The surgery was a success and Mr. Harmon proceeded to go through a full recovery. Dr. Kim indicated that an ethanol test was given to Mr. Harmon at 2:28 am on [May 25, 2011]. The results of the test found that Mr. Harmon had a blood alcohol content of .04, which although that reading various [sic] from person to person, is still well below the legal limit of intoxication while driving.

Detective Brian Pitts …, a [d]etective [c]orporal for the Darby Borough Police Department, testified that he was assigned to investigate the incident that occurred between Mr. Harmon and [Appellant]. Detective Pitts stated that on May 25, 2011 he met with witnesses Champella Harmon, Ms. Harmon, and Ms. Robinson at their place of residence. Detective Pitts took each witness separately into the kitchen of Mr. Harmon's resident and presented each witness with a photo array of possible suspects in the stabbing. Each witness identified the photo of [Appellant] in the photo array as being the individual who stabbed Mr. Harmon. All photos the witnesses pointed out as being the suspect were signed and dated by the witness. The following day, May 26, 2011, Detective Pitts went to the University of Pennsylvania [H]ospital and presented Mr. Harmon with the same photo array. Mr. Harmon identified [Appellant] as being the individual that stabbed him. Mr. Harmon signed and dated the photo after identifying [Appellant] as the suspect.

- 4 -

On June 17, 2011, a call was placed to the Darby Police Department that [Appellant], who was in hiding, was currently at his place of residence. One of the responding officers, Officer Jeffrey Bevenour …, testified that a perimeter was set up around [Appellant's] residence. After displaying the arrest warrant to [Appellant's] mother, Leslie Williams ("Ms. Williams"), the officers checked inside [Appellant's] house. It was eventually determined that [Appellant] was no longer there.

On April 3, 2012, officers were again dispatched to [Appellant's] resident in response to a domestic dispute. Officer Anthony Salvatore … of the Darby Borough Police Department responded to the dispute. Although Officer Salvatore was not the first officer on the scene, he was in full radio contact with those who were. Officer Salvatore testified that fellow Darby Police Officer Falkenstine radioed to other officers that upon arriving at the scene Officer Falkenstine was directed to the back door of [Appellant's] residence by Ms. Williams. After arriving at the back door, Officer Falkenstine noticed [Appellant] run out. Officer Falkenstine further added that he saw [Appellant] jumping over numerous fences eventually disappearing onto the railroad tracks beyond one of the fences. Subsequent to the information being broadcasted over the police radio, Officer Salvatore along with other officers[,] set up a perimeter to locate [Appellant]. It was eventually determined that [Appellant] could not be found.

[Appellant] was eventually arrested on June 29, 2012, over a year after the initial stabbing incident with Mr. Harmon.

Trial Court Opinion, 3/31/15, at 5-9.

On October 25, 2012, the Commonwealth filed an information at docket number CP-23-CR-6727-2012, charging Appellant with three counts

of simple assault, two counts of aggravated assault and one count each of attempted murder, PIC, possession of a weapon, terroristic threats, and recklessly endangering another person (REAP).[3]  On January 2, 2013, the Commonwealth filed an information charging Appellant with one count of escape at docket number CP-23-CR-7931-2012.[4]  Appellant proceeded to a bench trial on June 17, 2014, at the conclusion of which, the trial court found Appellant guilty of two counts of aggravated assault and one count each of PIC, possession of a weapon, terroristic threats, and escape.  The trial court found Appellant not guilty of attempted murder and the simple assault and REAP charges were withdrawn.  On September 5, 2014, the trial court imposed an aggregate sentence of 11 to 25 years' imprisonment, plus 5 years' probation.[5]  On September 10, 2014, Appellant filed a timely post-

_____

[3]  18  Pa.C.S.A.  §§  2701(a)(1),  2701(a)(2),  2701(a)(3),  2702(a)(1), 2702(a)(4), 901(a), 907(a), 907(b), 2706(a)(1), and 2705, respectively.

[4] Although not directly at issue in this appeal, we note the factual allegations surrounding the escape charge were that Appellant "was able to get away from the constables who were escorting him to and from the [preliminary] hearing[]" scheduled for the remaining charges at issue in this appeal.  N.T., 6/17/14, at 33.

[5]  Specifically,  the  trial  court  sentenced  Appellant  to  9  to  20  years' imprisonment for one count of aggravated assault, five years' probation for the  other  aggravated  assault  charge,  one  and  one-half  to  three  years' imprisonment for PIC, one to two years' imprisonment for terroristic threats, and two to five years' imprisonment for escape.  The trial court imposed no further penalty for possession of a weapon.  The sentences of incarceration for aggravated assault, PIC and terroristic threats were to run concurrently
*(Footnote Continued Next Page)*

sentence motion, which the trial court denied on September 22, 2014. On October 6, 2014, Appellant filed a timely notice of appeal.[6]

On appeal, Appellant raises the following issues for our review.

> [1.] Did the trial court erroneously allow the Commonwealth to violate [Appellant's] Sixth Amendment right to a speedy trial?

> [2.] Did the trial court erroneously allow the Commonwealth to violate [Appellant's] Fourteenth Amendment [rights under the Equal Protection and Privileges and Immunities Clauses?]

> [3.] Did the trial court erroneously allow the Commonwealth to [deny Appellant's c]laim of self-defense where [Appellant] was acting only with force that was equal to the force of the attackers [sic] [?]

> [4.] Did the trial court erroneously deny [Appellant's] motion [*in limine*] with respect to the weapon seized … [w]here the weapon that was charged to [Appellant] was found in someone else [sic] possession[?]

> [5.] Did the trial court erroneously allow the Commonwealth to violate [Appellant's] [m]otion to [s]uppress [p]hysical [e]vidence where [Appellant's] fingerprints was [sic] not on the weapon would be in favor to the defense?

_(Footnote Continued)_ ───────────

to each other. The sentence for escape and probationary sentence for aggravated assault were to run consecutively to the balance.

[6] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> [6.] Did the trial court erroneously allow the Commonwealth to violate [Appellant's] request for a line-up where [Appellant] has a right to a line-up[?]

Appellant's Brief at 4.

At the outset, we elect to address Appellant's second, fourth, and fifth issues together, as we dispose of all three on the same ground. In his second issue, Appellant avers that the Commonwealth violated the Privileges and Immunities Clause of Section 1 of the Fourteenth Amendment to the Federal Constitution. *Id.* at 20. Appellant argues in his fourth issue that the trial court erred in denying his motion *in limine* to exclude a weapon found in the victim's possession. *Id.* at 4. In his fifth issue, Appellant argues that the trial court erred in not suppressing said weapon. *Id.*

Generally, appellate briefs are required to conform to the Rules of Appellate Procedure. *See generally* Pa.R.A.P. 2101. While this Court will construe *pro se* materials liberally, "*pro se* status confers no special benefit on an appellant." *In re Ullman*, 995 A.2d 1207, 1211-1212 (Pa. Super. 2010) (citation omitted), *appeal denied*, 20 A.3d 489 (Pa. 2011). Rule 2119(a) requires that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Additionally, this Court will not consider an argument where an appellant fails to cite to any legal authority

or otherwise develop the issue. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009), *cert. denied*, ***Johnson v. Pennsylvania***, 562 U.S. 906 (2010); ***see also, e.g.***, ***In re Estate of Whitley***, 50 A.3d 203, 209 (Pa. Super. 2012) (stating, "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal[]") (citation omitted), *appeal denied*, 69 A.3d 603 (Pa. 2013).

In this case, Appellant has failed to provide any cogent argument as to how the Commonwealth violated the Privileges and Immunities Clause, abused its discretion in denying his motion *in limine*, or in not suppressing the weapon found on the victim's person. Appellant has not explained or developed any argument as to how any of these issues entitles him to a new trial. Based on these considerations, we deem these three issues waived for want of development. ***See id.***

Turning to his first issue, Appellant avers that the trial court erred in denying his motion to dismiss the charges with prejudice under Pennsylvania Rule of Criminal Procedure 600. Appellant's Brief at 7-8. The Commonwealth counters that the majority of any delays in proceeding to trial were caused by Appellant and that his speedy trial rights were not violated. Commonwealth's Brief at 12.

"When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion." ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> …
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Peterson***, 19 A.3d 1131, 1134 (Pa. Super. 2011) (*en banc*) (citations omitted), *affirmed*, 44 A.3d 655 (Pa. 2012).

Courts utilize an initial three-step analysis to determine whether Rule 600 requires dismissal of the charges against a defendant.

> The first step in determining whether a technical violation of Rule 600 […] has occurred is to calculate the "mechanical run date." The mechanical run date is the date by which trial must commence under the relevant procedural rule. [T]he mechanical run date is ascertained by counting the number of days from the triggering event - e.g., the date on which … the criminal complaint was filed - to the date on which trial must commence under Rule [600].

- 10 -

*Commonwealth v. Preston*, 904 A.2d 1, 11 (Pa. Super. 2006) (internal citations omitted), *appeal denied*, 916 A.2d 632 (Pa. 2007). In the second step, we must "determine whether any excludable time exists pursuant to Rule 600(C)." *Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. Super. 2007), *appeal denied*, 948 A.2d 803 (Pa. 2008). Then, in the third step, we add all excludable or excusable time to the mechanical run date, which provides the adjusted run date. *Id.*

Furthermore, delays not attributable to a defendant but where the Commonwealth is found to have acted with due diligence in attempting to commence a timely trial but was prevented by circumstances beyond its control, is considered excusable time and likewise added to the mechanical run date. *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004).

> "Due-diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Booze*, 953 A.2d 1263, 1273 (Pa. Super. 2008) (quotations and quotation marks omitted). "Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'" *Preston, [supra]* at 14 (citation omitted).

*Commonwealth v. Lynch*, 57 A.3d 120, 124 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1245 (Pa. 2013). Any time prior to trial, a defendant may move the trial court for dismissal of the charges if the Commonwealth has violated the Rule. Pa.R.Crim.P. 600(G).[7]

In this case, the Commonwealth filed its criminal complaint on May 25, 2011, rendering the mechanical run date May 25, 2012. Between the dates of May 25, 2011 and June 29, 2012, Appellant was unable to be located by police. Trial Court Opinion, 3/31/15, at 12.

> Officers exercised continuous due diligence in an effort to locate [Appellant] by consistently patrolling the area around [Appellant]'s residence. There was no additional information given to the officers to aid in their search of [Appellant] except for [Appellant]'s home address. Eventually, [Appellant] was arrested on June 29, 2012, over a year after the criminal complaint was filed.

*Id.* As Appellant does not challenge the Commonwealth's due diligence in apprehending him, this totals an excludable delay of 405 days. *See Commonwealth v. Miskovitch*, 64 A.3d 672, 678 (Pa. Super. 2013) (stating that Rule 600 excludes time where "the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence[]"), *appeal denied*, 78 A.3d 1090 (Pa.

---

[7] On July 1, 2013, a new version of Rule 600 took effect. However, as the criminal complaint was filed in this case before July 1, 2013, we utilize the former version of Rule 600. *See generally Commonwealth v. Roles*, 116 A.3d 122, 124 n.4 (Pa. Super. 2015).

2013); Pa.R.Crim.P. 600(C)(1). We further note that Appellant waived his Rule 600 rights due to continuances he requested from January 7, 2013 until June 7, 2013, adding another 151 days of excludable time. *Id.* at 600(C)(2). Appellant does not dispute this time period either in his brief.

Instantly, Appellant filed his Rule 600 motion to dismiss on July 9, 2013, which the trial court denied on July 29, 2013.[8] As noted above, the mechanical run date for Rule 600 purposes was May 25, 2012. From the two above-mentioned time periods, we have identified, at a minimum, 556 days of excludable time, which results in an adjusted run date of October 18, 2013. As a result, Appellant's Rule 600 rights were not violated when Appellant filed his motion to dismiss the charges and the trial court correctly denied Appellant's July 9, 2013 motion. *See Bradford*, *supra*.

In his next issue, Appellant argues that the evidence was insufficient to convict him of aggravated assault because the Commonwealth failed to disprove self-defense beyond a reasonable doubt. Appellant's Brief at 11. The Commonwealth counters that the evidence overwhelmingly showed that Appellant was the initial aggressor. Commonwealth's Brief at 18. We begin by noting our well-settled standard of review. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all

---

[8] The certified record reflects that Appellant filed multiple motions to dismiss the charges against him. The only Rule 600 motion that is referenced in Appellant's brief to this Court is his July 9, 2013 motion. Appellant's Brief at 9. Therefore, we confine our review to this motion.

reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [finder of fact] verdict beyond a reasonable doubt." ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, ***Patterson v. Pennsylvania***, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" ***Id.*** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." ***Id.*** (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

In this case, the offense at issue is aggravated assault, the statute governing said offense provides in relevant part, as follows.

### § 2702. Aggravated assault

**(a) Offense defined.--**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

…

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

…

**(b) Grading.--**Aggravated assault under subsection (a)(1), (2) and (9) is a felony of the first degree. Aggravated assault under subsection (a)(3), (4), (5), (6), (7) and (8) is a felony of the second degree.

18 Pa.C.S.A. § 2702.

We note that if a defendant presents evidence raising an issue of self-defense, the Commonwealth has the burden to disprove it beyond a reasonable doubt. *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011), *cert. denied*, *Houser v. Pennsylvania*, 132 S. Ct. 1715 (2012). The Commonwealth meets that burden if it proves any one of the following: (1) the defendant was not free from fault in provoking or continuing the conflict that resulted in the killing; (2) the defendant did not reasonably believe he was in imminent danger of death or serious bodily injury, and it was not necessary to kill in order to avoid that danger; or (3) the defendant violated a duty to retreat or avoid the danger. *Commonwealth v. Mouzon*, 53

A.3d 738, 741 (Pa. 2012). Further, "[a]lthough the Commonwealth is required to disprove a claim of self-defense … a jury is not required to believe the testimony of the defendant who raises the claim." **Houser**, **supra** (quotation marks and citation omitted). Nonetheless, "the Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony." **Commonwealth v. Torres**, 766 A.2d 342, 345 (Pa. 2001). Accordingly, we must determine whether the affirmative evidence presented by the Commonwealth was sufficient to disprove Appellant's claim of self-defense.

The Commonwealth presented the testimony of Harmon, that on May 25, 2011, Appellant left a message on his phone asking for Harmon to fight him. N.T., 6/17/14, at 50-51. Harmon did not know the reason why Appellant wished to fight. **Id.** at 51. Harmon called Appellant back and Appellant reiterated his desire to fight Harmon and informed him that he was coming over to Harmon's residence. **Id.** Harmon testified that after he hung up, he went downstairs, looked out the window and saw Appellant coming up to his front porch. **Id.** Harmon came outside and again Appellant asked to fight. **Id.** After leaving his residence for an hour to cool off, Harmon came back and Appellant was still outside requesting Harmon to fight him, and was "calling [Harmon's] mom [and sisters] all sorts of names[.]" **Id.** at 54, 55. Harmon acquiesced and Appellant told him to walk down the street. **Id.** at 55. Appellant and Harmon walked two houses down

- 16 -

and according to Harmon, "[w]e squared up and [Appellant] just stabbed me." *Id.*

The trial court concluded the Commonwealth disproved Appellant's claim of self-defense based on the following.

> In the instant case, [Appellant] initiated the confrontation between himself and Mr. Harmon. [Appellant] called Mr. Harmon's phone saying that he wanted to fight him. In addition, [Appellant] walked across the street from his residence to the residence of Mr. Harmon[,] shouting for Mr. Harmon to come outside and fight him. Further, [Appellant] shouted insults at Mr. Harmon's family in an effort to give Mr. Harmon an incentive to fight. Therefore, [Appellant] was the sole aggressor and the plea of self-defense cannot be established were [sic] [Appellant was] the aggressor.

Trial Court Opinion, 3/31/15, at 10.

After careful review of the certified record, we conclude the record supports the trial court's legal conclusion. Our Supreme Court has held that for sufficiency purposes the testimony of one eyewitness alone is sufficient evidence to sustain a conviction. *Commonwealth v. Brown*, 52 A.3d 1139, 1165 (Pa. 2012); *Commonwealth v. Duncan*, 373 A.2d 1051, 1054 (Pa. 1977). Harmon testified that Appellant made several requests to fight him, Appellant left his own home and came to Harmon's residence, remained there and shouted insults towards Harmon's family, all in an effort to get Harmon to agree to fight him. N.T., 6/17/14, at 50-55. Based on these considerations, we conclude the Commonwealth presented sufficient

affirmative evidence in order to disprove Appellant's claim of self-defense, as the evidence was sufficient to show that Appellant was the initial aggressor.

In his next issue, Appellant avers that he was entitled to a line-up procedure. Appellant's Brief at 15. Appellant requested a line up on the record during a hearing on April 7, 2014. N.T., 4/7/14, at 13. The trial court denied the motion during the same. *Id.* at 14. The Commonwealth counters that identity was not an issue in this case; therefore, the trial court was not required to order a line-up. Commonwealth's Brief at 22.

> The grant or denial of a request for a lineup is within the sound discretion of the trial court, and such a decision will not be disturbed on appeal absent an abuse of discretion. *Commonwealth v. Rush,* 562 A.2d 285 (Pa. Super. 1989). A criminal defendant has no constitutional right to a lineup. *Commonwealth v. Lark,* 462 A.2d 1329 (Pa. Super. 1983), *aff'd,* 477 A.2d 857 (Pa. 1984). "[O]nly in those cases where an identification lacking a strong indicia of reliability is the sole evidence against the defendant should a defendant's timely request for a lineup be granted." *Commonwealth v. Beverly,* 547 A.2d 766, 767 (Pa. Super. 1988), *appeal denied,* 564 A.2d 1259 (Pa. 1989) *citing Commonwealth v. Sexton,* 400 A.2d 1289 (Pa. 1979).

*Commonwealth v. Blassingale*, 581 A.2d 183, 190 (Pa. Super. 1990) (parallel citations omitted).

In the case *sub judice*, Harmon testified that he had known Appellant for years leading up to the incident on May 25, 2011. N.T., 6/17/14, at 50. Harmon testified that he and Appellant were good friends, and Appellant was on friendly terms with Harmon's family. *Id.* Harmon's sister, Brittany

Robinson, also testified as having a "close friendship" with Appellant. *Id.* at 89. Harmon's mother, Zina Harmon, testified that she knew Appellant well, and he would even have meals at their home. *Id.* at 122. Ms. Harmon testified that her son and Appellant were in her house "all the time." *Id.*

The trial court concluded that identity was not an issue in this case as "[t]he record reflect[ed] that both the victim, Mr. Harmon, and his family were extremely familiar with [Appellant] prior to this incident." Trial Court Opinion, 3/31/15, at 14. Our review of the record reflects that the trial court's conclusion is amply supported by the trial testimony. Therefore, this did not taint the in-court identifications of Appellant, and the trial court did not abuse its discretion in denying Appellant's request for a line-up. **See Blassingale**, **supra**.

Finally, we address Appellant's claim that the trial court abused its discretion in sentencing by failing to consider the sentencing guidelines and factors enumerated in Section 9721 of the Sentencing Code.[9] At the outset, we note that this issue pertains to the discretionary aspects of his sentence. It is axiomatic that in this Commonwealth, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." **Commonwealth v. Tobin**, 89 A.3d 663, 666 (Pa. Super. 2014) (citation

---

[9] We recognize that Appellant did not include this issue in his statement of questions presented as required by Rule 2116. **See generally** Pa.R.A.P. 2116(b). However, we decline to find waiver on this basis.

omitted). When an appellant forwards an argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

In the case *sub judice*, we note that Appellant has failed to include a Rule 2119(f) statement in his brief, and the Commonwealth has noted its objection.  Commonwealth's Brief at 24-25.  "If a defendant fails to include an issue in his Rule 2119(f) statement, and the Commonwealth objects, then … this Court may not review the claim."  **Commonwealth v. Karns**, 50 A.3d 158, 166 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).  As the Commonwealth has lodged its objection, we deny Appellant's petition for permission to appeal the discretionary aspects of his sentence.  **See Trinidad**, **supra**.

Based on the foregoing, we conclude all of Appellant's issues on appeal are either waived or devoid of merit.  Accordingly, the trial court's September 5, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/28/2015</u>